And that brings us to Ramji v. Hospital Housekeeping Systems and we will hear first from Attorney Keebaugh. Thank you, Your Honor. May it please the court, this is Reagan Keebaugh and I'm here today representing the appellant in this case, Ms. Noorjahan Ramji. The district court's order should be reversed because the district court completely overlooked the initial and most obvious FMLA violation in this case and that's that the appellant or the Appalee Hospital Housekeeping Systems or HHS failed to provide Ms. Ramji with proper FMLA notice within five business days of September the 16th of 2016 and that's the date on which the company became indisputably aware that Ms. Ramji needed leave and was away on leave due to a serious health condition. Now with respect to an employer's obligation to provide the rights and responsibilities notice and eligibility notice under the FMLA to an employee, the FMLA regulations say this, it says an employee shall provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request. Depending on the situation, such information may include that a condition renders the employee unable to perform the functions of the job. Now in this case, it's undisputed that Pamela Merriweather, Ms. Ramji's supervisor, was the highest-level HHS official at Eastside Medical Center. She's also the person there charged with responsibility of implementing the company's FMLA policies. It's undisputed that Merriweather was there at work when Ms. Ramji fell and injured her knee on the 15th of September. It's undisputed that they both went together to the on-site emergency room and Merriweather was present when the doctor in the emergency room gave Ms. Ramji a note that she was to be removed and not go to work through September the 18th, so three days later. This is Judge Anderson. Personally, myself, I think there were several violations of the FMLA regulations about notice and so forth, but my most reliable claim, you have to show prejudice, and I'm worried that you have not been able to show prejudice. You're trying to show prejudice in that you argue in your brief that if you had known about the FMLA right and been advised like you should have been under the regulations, you would have sought treatment immediately, and the problem that I'm having is I don't see any evidence in here that would create a genuine issue of fact that this plaintiff could have cured her problem within the 12 weeks and then been able to pass that test, which required the 10 deep knee bends, which you don't challenge as being essential functions of the job. Could you address that? Well, and I certainly will, Judge Anderson. We do challenge whether the deep knee squats is an essential function of her position. In our brief, we've described that she's been doing this job for I think 14 years, for at least 12 years. She worked for the company for 12 years doing this job and never before been required to do a deep knee squat to perform that function. That's something that we've argued in our brief. So even if we get to that point of has she been given leave and has she been given the 12 weeks of leave and come back, that still is not, there's at least a question of fact as to whether a deep knee squat or your ability to do 10 of them is an essential function of the position. And I would submit that there is evidence here that Ms. Ramji would have been able to return to work within the 12-week period. And most importantly, Judge Anderson, is not only is there evidence, because the question here is not can she prove it, but there's at the very least a dispute of material fact about whether she would have been able to return to work within the 12-week period. Because what she testified to is, and that's why we're arguing the initial violation is they never gave her notice. So she's fired. She loses her job. This is a 60-year-old woman. She's fired after 12 years on this job. She has no clue what her financial future is. She's not a wealthy person. This is a job I think she was making $12,000 an hour. She loses her job. She's no longer able to get workers' comp treatment because the doctor had released her to full duty. And so she's not able to seek the treatment that she would have sought had they given her FMLA leave. Because that notice, when they gave her FMLA leave, and had she taken it, she would have been told that you have a right to job restoration. So as she testified, has she known that? Has she been able to take leave with the assurance that her job would be waiting for her, as we see in Vinoy, with that right, that she would have sought treatment? She would have gone and gotten physical therapy. She would have spent the money. She potentially would have borrowed it from family in order to get the money to receive treatment to go back to work because she was worried about being able to find a job. Council, wouldn't she also have received the lump sum of accrued leave? That is correct. And then she would have to leave that to get treatment? That is correct, Judge Lugoa. That's another way that she was prejudiced, where under the, as we've explained in our briefing, under the company's policies, she would have received that accrued, had she taken the leave, she would have received the accrued, yes. Council, I'm sorry. I just want to make sure. I should have said my name. It's actually Robin Rosenbaum who's asking that question. I apologize. No. I apologize. I'm sorry. I should have said my name. She would have. Yeah, that's one way she was prejudiced. But the big point here is that this case was decided on a motion for summary judgment that was granted, right? So Ms. Romji, in order for this case to reverse, we don't have to show that she definitely would have been able to return to work. We have to show that there were material, there were disputed material facts as to whether she would be able to return to work. And she's testified. I mean, you look at the timeline that we've set out in our brief. Once she started receiving physical therapy, the doctor cleared her to return to work in six weeks. Now, they then cut off that physical therapy, and she didn't fully recover. But after, once she did start getting physical therapy, she's testified that she would have been able to come back to the job within that 12-week period. But the big point here is she was never even permitted to try. This, I will submit, this would be a different case. Had they given her notice, and had she taken FMLA leave 12 weeks, and had she then come back and was subjected to this essential functions test at that point in time, that, you know, at that point in time, maybe we have a different outcome. But here, she was never even given the opportunity to take leave. She never took a single day of leave before being fired. Time has expired. Thank you. And if I may, may I continue for just a minute? You can if you want to, but it will go into your rebuttal time, unless you just want to briefly conclude with a sentence. Yeah. I'll briefly conclude. I would point out that under the Fourth Circuit's opinion in Vannoy, okay, that case they wrote that prejudice can be gleaned from evidence that had the plaintiff received the required notice, she would have structured her leave differently. And in this case, there's at the very least a question of fact as to whether Ms. Ramji would have requested leave and taken leave and how long that leave would be. And there's at the very least a question of material fact as to whether had she been given notice and taken leave, whether she would have been able to return to work within that 12-week period. And if there's no further questions for me, I'll respectfully reserve the remainder of my time for rebuttal. All right. Thank you, counsel. We will hear from Mr. Glazer. Good morning, Your Honors, counsel, and may it please the court. My name is Zach Glazer of Bennett, Jacobs, and Adams, and I represent the Abilene Hospital Housekeeping Systems, LLC, who I may refer to as HHS. In this case, the district court properly granted HHS's motion for summary judgment for two main reasons. First, at no point was HHS required to provide Ms. Ramji an ephemeral notice of rights under the unique circumstances of this particular case. Second, even if there was a technical violation of FMLA for failing to provide such notice, Ms. Ramji was afforded all rights available to her under the FMLA and cannot establish any actionable prejudice as required by the FMLA. Yes, Your Honor. It seems to me that there are some notice violations here. She was never required to take FMLA leave, and though she may have been on workers' compensation, the fact that one's on workers' compensation does not somehow relieve the employer from notifying the employee of FMLA rights. So I'm not sure I understand your argument in that respect, so maybe you'd like to address that. Sure. Thank you, Your Honor. Our argument with that respect is premised on 29 CFR Section 825.303, which provides some pertinent parts that an employee shall provide sufficient information for an employer to reasonably determine whether FMLA may apply to the leave request. So there's a reasonableness standard built into an employer's determination as to whether FMLA applies to an employee's request or need for leave. But how is this reasonable, what your client decided to do? Your Honor, in this case, we have to look at the actual facts of what happened in the context of when they were happening and how they're happening. So HHS was aware of Ms. Ramji's injury on September 15, 2016. On that same day, however, HHS was also aware that Ms. Ramji would only miss a few days of work, and she had a follow-up appointment for her knee on Friday, September 23, 2016. She missed three days of work. Is that not enough under the regulation? And, of course, the company hospital knew that Meriwether knew that. Isn't that enough right away to give the sufficient information to the hospital? Well, under a strict reading of the FMLA, it would be. But, again, this goes to the reasonableness based on what HHS actually knew at the time. And, again, as counsel pointed out, notice was not due until September 23, 2016. That's the five business days after we could have known. So notice is not due until September 23. And Director Pam Meriwether noted in her investigation report that as of September 19, Ms. Ramji is scheduled to... It's not due until that time. I mean, Ms. Meriwether was present at the appointment on the 15th when Ms. Ramji was advised by her doctor at the time, actually the workers' compensation doctor, that she would need to be out for at least the next three days. And that physical therapy was prescribed for the next several weeks. So why wasn't that enough at that time to trigger the notice requirement? Your Honor, the notice is due five business days from when that notice requirement would be triggered. So even assuming that it was triggered on that day and as conceded by the appellant in their brief, notice would not be due until September 23, 2016. And so as of September 15... But that's the point, right? Why wasn't that enough, though? Why wasn't what happened on the 15th enough to trigger the notice being due on the 20th? Your Honor, it's because of the particular circumstances of this case and that Ms. Meriwether was there and she knew that Ms. Ramji... And these are in her investigation notes, which are in the Record 56, Exhibit 3, that she was designated to follow up on September 23rd and ongoing treatment was not expected. So at this point in time, HHS knew Ms. Ramji's seemingly minor knee injury could be resolved by September 23rd. But you also knew that that's actually not accurate because you also knew she needed physical therapy. So within three days, it was not going to resolve itself. Because if you need physical therapy, it means that it's not going to resolve itself without physical therapy, correct? Oh, that would be correct. Thank you, Judge Legault. I believe that the physical therapy designation was on the 23rd. So when she went for the follow-up visit, it was determined that she could return to work light duty with restrictions and then she was prescribed with physical therapy to follow up. I guess my problem is that you wanted to affirm on a matter of law that it seems to me that there's genuine material disputes at issue here as to what's reasonable or not reasonable. Well, the crux of the District Court's granting of summary judgment was really the issue of prejudice. We are countering the appellant's argument that notice was required. We don't think that notice was required, but even if notice was required, Your Honor, as Judge Anderson pointed out, there really is no prejudice to Ms. Romji. In that regard, if the plaintiff is in fact challenging the 10 deep knee bends as being part of the essential functions, it seems to me there may well be issue of fact as to whether that really is required. And if she is actually challenging that, I did think that her evidence was rather speculative that she could, with 10 weeks of therapy, get the knee in position where she could do the 10 deep knee bends because she just says so. In fact, she doesn't even say she could do the 10 deep knee bends. She just says she could do the essential functions of her job. She has no expert, no medical evidence, and the medical evidence is in your favor that Dr. Jove, J-O-V-E, on May 30th, there are considerable problems still when he gave her the right to go back to work. And he didn't have, because you didn't give the notice, he didn't have the essential functions in front of him. And so when he said she could go back to work, he didn't know about the 10 deep knee bends. But if the 10, if at issue in this case is whether or not 10 deep knee bends are part of the essential functions, then it seems to me there probably is an issue of fact about it. Well, Your Honor, I would dispute that because the FMLA, I would dispute that there's an issue of fact with regards to these claims because, first of all, I suppose there is an issue of fact as to whether or not the 10 knee bends are required as an essential function. We submit they are. Ms. Ramji's declaration says she didn't do them. But that's really not an FMLA issue because the FMLA doesn't govern the essential functions test. That's really an ADA question. And that's slide 229 CFR 825216C, which deals with this exact situation, which provides if the employee is unable to perform an essential function of the position because of physical or mental condition, including the continuation of a serious health condition or an injury or illness also covered by workers' compensation, the employee has no right to restoration to another physician under the FMLA. The employer's obligations may, however, be governed by the Americans with Disabilities Act. The Americans with Disabilities Act governs essential functions test  Yes, Your Honor. For example, part of the problem here is that the FMLA does actually sort of anticipate that the doctor would know what the essential function test required before certifying the person as ready to go back to full duty. And here the doctor was never advised of it. And Ms. Merriweather also admitted that the essential function test checklist was not posted anywhere at the workplace. And she couldn't recall having given it to the plaintiff or to Dr. Harkins. So doesn't that present a problem for your client? Respectfully, no, Your Honor. I don't believe it does for a couple of reasons. First, with regards to what Dr. Harkins knew at the time he released Ms. Ramji to full duty,  which is on the record as number 48, his assessment is due in part and initially on Ms. Ramji's own statements. Looking at Exhibit 9, he says, Ms. Ramji returns for her right knee and ankle. She is doing great. She states that the injection she got on her left is the essential function test. But counsel, this is Judge Lagoa, but that doesn't answer the question. Because if a doctor does not know that the employer is requiring something as an essential function of the job and that employee cannot perform that essential function, then releasing them to full duty is improper. How could they go back to full duty if they cannot perform an essential function of the job? So the question is, and you've conceded, that there's a dispute as to whether or not that's an essential function of the job. Thank you, Judge Lagoa. Sorry, go ahead. No, you go ahead. Sorry. Okay. Yeah, so that goes, again, directly to the regulation that deals with the situation that if there's an essential function of the job issue, the ADA governs. And, again, in Dr. Harkin's note, he says that Ms. Ramji tells him she is ready to return to work. She tells him, I know this job. I'm ready to go to work. And then he does his own examination and says, I will place her back to work. She is at MMI. He examined her right knee, and she has full range of motion. She has no pain. She has no instability. Pulses are intact. She is neurologically intact. She is fully healed. So this is the information that is given to HHS. But, again, you're saying that Ramji told Harkin that she was ready to go back to work because she could do the job. And the problem is that neither Ramji nor Harkin knew that in order for her to be able to go back to job, she would have to pass this essential functions test, at least specifically what was on it, which included a bunch of things that, at least according to Ms. Ramji, were never actually required for her to do when she did her actual job. So I'm not sure how that gets past the problem. Well, Your Honor, that does not create prejudice under FMLA. And, again, I go back to the regulation because it specifically tells us. If she could do the job, and she could have done it, she could have gotten herself in position to do the job within 12 weeks. It seems to me that is prejudice. Well, Your Honor, I don't think there's any record evidence that actually establishes that she could have healed herself in time to return in 12 weeks. Specifically, the appellant's argument is based on when she began physical therapy on April 13th. And then they kind of go through it and say that she was cleared to work on May 30th, 2017. So she would have been able to return in 12 weeks. But this is erroneous because she actually started her treatment in February of 2017. Two minutes remaining. Thank you. She actually started her treatment in February of 2017, not April of 2017. So even under those strange scenarios where she starts treating again in February,  that's significantly more than 12 weeks, I believe it's 14 weeks, which also doesn't take into account the several months between her injury in September and February of 2017, which could have impacted that. But either way, under the facts of this case, when she started her treatment again in February of 2017, she was not cleared to work until May of 2017. That's 14 weeks. So either way, she wouldn't have been prejudiced because she wouldn't have been able to return in 12 weeks. And all of this completely disregards the fact that after... Counsel, I'm sorry. This is Robin. Yes, Your Honor. We don't actually know that, though, because in this case, she was made to do these, you know, multiple deep knee squats or deep knee bends, whatever they may be called, before she had gone through her full regimen of physical therapy. So there's no way to know whether, you know, whether she would have been able to do it at the end of it had that, had her course of rehabilitation not been interrupted and, in fact, perhaps had she not re-injured herself in trying to do these essential functions tests that were required of her. I mean, it seems like a problem for your client. By the time she has the February 2017 treatment, you know, she's had, there's been an interruption to her recovery. She hasn't been able to receive the physical therapy that she was supposed to get to fully recover. And so, I mean, it seems to me like there's prejudice to her. And we certainly have to make all of the reasonable inferences from the evidence that there is. We have to draw them against the moving party here. So why is that not the case that Ms. Ramji has demonstrated enough to show at least a question of fact concerning prejudice? I'm going to just, Janice, and I'm going to add a little nuance to her question. At page 35 of the plaintiff's brief, she cites her declaration in paragraph 8 and her deposition at page 53, 54 for the proposition. And my law clerk looked at this and said that plaintiff did testify that later in 2018, she got 12 weeks of therapy. And then according to her testimony, she was able to do every function of the job. Now, I had thought perhaps if she had not challenged the 10 deep knee bends that that was just a conclusory statement. But that is definitely evidence that she could do the job if the essential function of the job are at issue. She had done it for a long time, so she knew she had expertise herself as to what the job took. Why is that not enough to create a genuine issue of fact? Thank you, Judge Anderson. I'm sure my time is up right now, so Judge Rosenbaum, if I may quickly answer Judge Anderson's questions and refer back to yours. Please go ahead and do so. Great. Thank you, Your Honor. Judge Anderson, again, those 12 weeks are based on the fallacy that she didn't start treatment until April 2017, when she actually started treatment in February of 2017. So, again, I believe it's actually 14 weeks rather than 12. So either way, she wouldn't be pregnant just by that because she would not have been able to return within 12 weeks time. And Your Honor, Judge Rosenbaum, her therapy was interrupted because her doctor certified that she was 100 percent healed. And so at that point, FMLA ends. And this is all assuming that she was ever even on FMLA. But again, this is Judge Lagoa. He cleared her because he did not know what the essential functions of the job were, and there was a dispute after that. And if 10 Gs, then, were part of the essential function, it's a question of fact, isn't it, to ask the doctor whether he would have cleared her? Is there testimony? Would he have cleared her if he had known that that was a requirement, essential function of the job? Judge Lagoa, there is no testimony after that, but I respectfully disagree that Judge Harkins returned her because he didn't know the essential functions of the job. He cleared her because he examined her right knee, and she had full range of motion. She had no pain. She had no instability. And she told him that she is doing great. She has no pain. And the physical therapy has helped tremendously. That's why he returned her work, because she was 100 percent healed. The FMLA ends. And under the FMLA, the ADA may kick in, but this is not an ADA case. So, the hospital has to be consistent with the respectful request that this court affirm the district court's correct grant of summary judgment. Thank you, Mr. Glazer. That brings us back to Mr. Keebaugh. This is Reagan Keebaugh. Am I up again? I wasn't able to hear you. Yes, counsel. Okay. I'll begin by correcting something that Apelli's counsel has represented this court. He stated that her treatment began in February of 2017, and that was 14 weeks from when she was cleared in May. That's actually incorrect. In February of 2017, she was given an unloader, a knee unloader, which is a brace for her knee. She then was sent home for six weeks and came back with still having issues. And she came back in April. She was still having issues. And that's in April of 2017 is when the doctor gave her a prescription the second time for more physical therapy. So, she started physical therapy in April of 2017, and then she was cleared to return to work the following month in May of 2017. So, that timeline shows that, you know, she certainly would have been able to be cleared to return to work within 12 weeks had she taken the FMLA leave. And, again, Judge Anderson correctly points out that Ms. Ramji has testified also that, after receiving a full 12 weeks of physical therapy, that she's able to perform the duties of the job. And I'll point out that, you know, Ms. Ramji, again, she's a 60-year-old woman. She's been diagnosed with rheumatoid arthritis in her knees. You know, even before she started working for this company, she had rheumatoid arthritis in her knees. And she takes prescription-strength pain medicine for that condition. Okay? When she was first hired by HHS, they didn't make her do deep knee squats. So, she never did that before. She testified she's never done it before at the job, yet she's worked this job successfully for 12 years. Even Pam Merriweather testified that she observed Ms. Ramji limping. She walked with a limp at work. You know, all these 12 years, they observed her walking with a limp at work, yet she's performed the job fine. Merriweather said she was an average employee. So, we absolutely do question whether the deep knee squat requirement, you know, one, even one, much less 10 in a row, accurately represents the essential functions of this job. I don't think it does. You know, certainly, and on top of that, it wasn't just deep knee squats. It was lunging to the ground, touch each knee to the ground 10 times each leg, and then stand on your toes for 30 seconds. So, this test does not, we absolutely do believe that there's a question of fact as to whether this test represents the essential functions of Ms. Ramji's job. She's testified that it didn't. She's never before had to do a deep knee squat. And keep in mind, a deep knee squat, that's not just leaning down to the ground. That's where you kneel down until your thigh touches your calf. And she had to do that 10 times over. So, there's, at the very least, a question of material fact as to whether that is an essential function of her job. Now, Judge Anderson brought up the fact that, you know, some of Ms. Ramji's testimony might have appeared to be speculative. Well, it was, she has to speculate about what would have happened because she was never given the opportunity to take even a single day of leave as a result of the company's failure to give her proper FMLA notice. So, she's put into a position where she's got to speculate about what would have happened had they given her notice. And it's not hard to believe that Ms. Ramji would have preferred to take FMLA leave instead of being subjected to this essential functions test and being fired for failing it. So, I think certainly a jury would believe that an employee in her position would prefer to at least attempt to take leave, attempt to recover. So, again, there's certainly a question of material fact on that issue. Now, keep in mind, when you're looking at the timeline after she was terminated, she has multiple recommendations about getting physical therapy from different physical therapists. And she's put into a position, you know, because they fired Ms. Ramji, she was no longer able to get workers' comp treatment until she actually filed the workers' comp claim. And she no longer had wages from her job. So, you know, she's put into this position where she has to rely on workers' compensation in order to get the treatment that she needs. And they didn't approve her to start additional physical therapy until the next year in April. You know, so this delay is by no means Ms. Ramji's fault. It's the simple fact that she can't afford these treatments. You know, this is a job that she had had for 12 years. She wasn't working at the time. She's completely relying on workers' compensation to get the treatment, and she's having to get whatever they'll dole out to her and whatever they'll approve. And she did her best to get better, and she did. Now, if you look at the issue here, too, is whether, you know, whether Dr. Harkins, your honors have brought up the issue of whether Dr. Harkins was aware of this essential functions test requirement. We cleared Ms. Ramji to go back to work. And I'd like to highlight the fact that under the FMLA regulations, so they – and this is – I'll read. This is from 29 CFR 825.300, subsection D3. This says, if the employer will require the employee to present a fitness for duty certification to be restored to employment, the employer must provide notice of some requirement of the designation notice. If the employee will require – or, sorry, if the employer will require that the fitness for duty certification address the employee's ability to perform the essential functions of the employee's position, the employee must so indicate designation notice and must include a list of the essential functions of the employee's position. So that's a requirement in the FMLA regulation. And that made its way to the employer's FMLA policy. So we see that – this is at docket number 56-16. I'm reading from the – from HHS's FMLA policy. That policy states, when the leave was due to a team member's own serious health condition, a fitness for duty certification from the team member's health care provider will be required to verify his or her ability to return to work and the essential functions of the job. So under the FMLA regulations, had they given her this notice, they would have been required to tell Ms. Ramji that, by the way, this is a list of the essential functions of your job. And the reason that they have to do that is so that she can take that list of essential functions to her health care provider and say, this is what they need to do. Okay, can I go – can I do this? And without that information, I mean, certainly if the list included you've got to come back and do 10 deep knee squats, I'm very certain that Ms. Ramji's health care provider is not happy with her doing that just literally weeks after receiving an injection of pain medicine into her knee for a very serious knee injury. So that – I mean, the prejudice here – there's prejudice strewn throughout this whole scenario. And for the – if this court were to uphold the district court's ruling, you would essentially be saying that an employer can blatantly violate the FMLA notice regulations, blatantly violate it. They've got clear evidence that this person is on leave and on leave due to a serious health condition. They can deny this person notice. They can thereby make it so that they're not – they're denied the opportunity to make informed decisions about their health care, knowing – May I finish, Your Honor? Thank you. You can do one more sentence if you want to do a conclusion. I think we have your case, though. Okay. I appreciate your time. I'll conclude. I respectfully request that this district court be – or be reversed, that we be allowed to present this case to a jury. Thank you, counsel.